OPINION OF THE COURT
Wachtler, J.
The primary question on this appeal is whether the rule requiring the trial court to afford the prosecutor an opportunity to withdraw consent to a plea when the Trial Judge finds the agreed-upon sentence excessive (People v Farrar, 52 NY2d 302), also applies to the Appellate Division and limits its statutory power to reduce an excessive sentence in the interest of justice (CPL 470.15, subds 2, 6, par [b]; 470.20, subd 6). In this case the Appellate Division modified the sentence as excessive but, finding the Farrar holding applicable, remitted to the trial court to afford the People an opportunity to withdraw their consent to the plea. Both sides have appealed from the modification.
The defendant contends that the Farrar rule only applies to trial courts and that when the Appellate Division finds a sentence excessive the proper corrective action is to reduce the sentence to an appropriate one. The People contend that the Farrar rule also binds the Appellate Division, but that the court abused its discretion in finding the sentence excessive in this case and, in any event, the defendant forfeited his right to appeal the sentence by pleading guilty.
In July, 1978 the defendant, then 17 years old, shot and killed another youth on a Brooklyn street. The incident apparently occurred when the victim and several others approached the defendant and accused him of stealing a bicycle. The defendant was on a moped and the others were riding in a car. According to the victim’s friends the defendant fired without provocation. The defendant initially denied the shooting but later stated that he had acted in self-defense. The defendant claimed that the victim had previously hit him with the car. This prompted the defendant to borrow a gun for protection, and use it on the day of *517 the shooting when he believed the victim was about to pull a gun on him. The defendant had no prior record of criminal convictions.
The Grand Jury indicted the defendant for murder in the second degree and possession of a weapon in the first degree. He was brought to trial in November of 1979. However, after a jury had been selected the defendant and the prosecutor agreed that the defendant would plead guilty to first degree manslaughter in satisfaction of the indictment. In support of the application to change the plea the prosecutor stated: “[I]n view of the fact the defense is offering a plea of guilty to the crime of manslaughter in the first degree, which under the fact pattern a jury could find, and the term of imprisonment Your Honor will stipulate to, the People would therefore be willing to take a plea to manslaughter in the first degree”. The court accepted the plea and stated that he would sentence the defendant to the maximum term, 8V3 to 25 years’ imprisonment.
At the time of sentence the court noted that the defendant was eligible for youthful offender treatment, but denied him “youthful offender consideration”. The court also observed that there was nothing in the probation report which would “preclude the court from imposing the sentence that was agreed upon at the time he pleaded guilty”. After pronouncing sentence the court directed the clerk to advise the defendant of his right to appeal.
The defendant appealed claiming that the imposition of the maximum permissible sentence was unduly harsh under the circumstances. He noted that this was his first offense and although it was a serious one, asked the court to consider “as a mitigating factor the likelihood that the deceased was not blameless but rather provoked the incident”. The defendant also submitted records showing successful completion of educational and trade courses in prison, which he claimed indicated his attitude toward rehabilitation and ability to find productive employment if released from prison. He stated: “Despite the seriousness of the crime, appellant’s act was an aberration from a life pattern of non-violent, law-abiding behavior and stable family life” and asked the court to exercise mercy and reduce his sentence in the interests of justice.
*518 The People opposed the application on the ground that the sentence imposed was a proper exercise of the trial court’s discretion.
The Appellate Division modified, as a matter of discretion in the interests of justice, by reducing the sentence to a term of 3Vs to 10 years. The court stated: “Under the facts presented, the sentence was excessive to the extent indicated” (88 AD2d 939, 940).
The People then moved to resettle the Appellate Division order so as to afford them the opportunity to withdraw their consent to the guilty plea and proceed to trial on the indictment. The prosecutor urged that this was required by our decision in People v Farrar (52 NY2d 302, supra). The Appellate Division agreed and amended its decision and order by remitting the case to the trial court to offer the People the option of accepting the reduced sentence or withdrawing their consent to the plea, thus restoring the case for trial. As indicated, the defendant and the People have cross-appealed from the modification.*
In the Farrar case we held that if the trial court concludes after accepting a plea that a lesser sentence than that agreed to by the parties is warranted, it should afford the People the opportunity to withdraw consent to the plea, absent exceptional circumstances. The decision was based on the legislative policy expressed in CPL 220.10 (subds 3, 4), which requires the consent of the court and the prosecution before the defendant is permitted to enter a plea to less than the entire indictment or to a lesser included offense. The opinion also stresses the fact that the ultimate decision with respect to the appropriate sentence in a particular case, even a “negotiated sentence” presumably acceptable to the parties, rests with the judiciary and that the trial court cannot be compelled to impose a sentence it finds unwarranted simply because it was a condition of the plea.
In the case now before us those requirements were met by the trial court. As noted the court accepted the plea with *519 the consent, indeed recommendation, of the prosecutor. Before pronouncing sentence the court made an independent study of the case and in fact imposed the sentence agreed to by the parties after concluding that nothing brought to his attention precluded him from doing so.
On its facts the Farrar decision only dealt with the powers of the trial court with respect to pleas involving “negotiated sentences”. The statute upon which the decision was based, and the legislative policy expressed in that statute applies only to prosecutions of indictments at the trial court level (see CPL tit J). The powers and responsibilities of the Appellate Divisions with respect to sentencing are governed by other statutes which were not at issue in Farrar. A review of those statutes shows that the Legislature has adopted procedures at the intermediate appellate level, conferring different authority to reduce sentences on the Appellate Divisions than has been granted to the individual Trial Judges.
The Legislature has expressly authorized the Appellate Divisions to review sentences on appeals from convictions (CPL 450.10, subd 2). The Appellate Division’s scope of review with respect to sentences is broadly defined. It may reverse or modify the sentence, not only in those instances where the sentence was “unauthorized, illegally imposed or otherwise invalid as a matter of law” (CPL 470.15, subd 4, par [c]) but also where the court concludes that the “sentence, though legal, was unduly harsh or severe” (CPL 470.15, subd 6, par [b]). This latter inquiry is addressed to the Appellate Division’s discretion and power to act in the interests of justice. It is not confined to correcting errors of law (CPL 470.15, subd 6, par [b]).
The Legislature has also prescribed the corrective action the Appellate Division must take if it decides that a sentence legally imposed is excessive under the circumstances of a particular case. CPL 470.20 (subd 6) states: “Upon modifying a judgment or reversing a sentence as a matter of discretion in the interests of justice upon the ground that the sentence is unduly harsh or severe, the court must itself impose some legally authorized lesser sentence”.
*520 Thus the Appellate Division was not bound, as it assumed, to afford the People the option of withdrawing their consent to the plea once it concluded in the exercise of its discretion that the sentence imposed was excessive. Its first order, simply reducing the sentence to a lesser term, was in accord with the relevant statute. It was also consistent with the well-established practice.
The power of the Appellate Division to reduce a sentence, which it finds unduly harsh or severe, in the interest of justice and impose a lesser one has long been recognized in this State. It was originally exercised as an inherent power (see, e.g., People v Miles, 173 App Div 179,183-184) and was later codified in section 543 of the Code of Criminal Procedure. When the Legislature adopted the current CPL in 1971 it again expressly authorized the practice, without substantive change (CPL 470.15, subd 6, par [b]; 470.20, subd 6).
The defendant did not, as the People urge, lose his right to seek appellate review of his sentence by pleading guilty. The statutes governing this type of appeal draw no distinction between sentences based on verdicts of guilty and those resulting from guilty pleas. In either circumstance the defendant has a statutory right to appeal to the Appellate Division’s discretionary power to reduce his sentence if the interests of justice warrant it. The defendant did not expressly waive this right to appellate review at the time he pleaded guilty (cf. People v Williams, 36 NY2d 829). Neither did the defendant automatically forfeit the right by entering the plea of guilty (cf. People v Thomas, 53 NY2d 338). As we noted in People v Coleman (30 NY2d 582, 583): “Although the scope of appeal in a criminal case after a guilty plea is narrowly limited, one of the questions reviewable by an Appellate Division is the severity of sentence”.
If the exercise of this power frustrates the People’s expectations in cases involving negotiated sentences it is not the result of any change in the law. The statute is clear on its face and has been uniformly, albeit rarely, employed in the past. It presents a risk, although a minimal one, which presumably is taken into account or discounted at the time of the plea negotiations.
*521 The People’s final contention that the Appellate Division abused its discretion when it found the sentence imposed in this case to be excessive, poses no question of law for this court to consider. It is well settled that any question as to whether an otherwise lawful sentence is harsh or severe in a particular case involves a type of discretion not reviewable by the Court of Appeals (People v Rytel, 284 NY 242, 246; People v Potskowski, 298 NY 299, 303).
In sum, our decision in this case, as in Farrar, is dictated by the applicable statutes. The Legislature has provided that the prosecutor’s consent to a plea is required at the trial court level which necessarily permits the prosecutor to impose lawful conditions which the trial court cannot disregard. The Legislature, however, has not seen fit to impose similar restrictions on the Appellate Division’s power to reduce a sentence in the interests of justice and impose a lesser one if a majority of the court concludes that the sentence imposed was unduly harsh under the circumstances.
There is no need to consider whether these procedures intrude on the “traditional power” of the District Attorneys to control the course of the prosecution as the People suggest, or have the practical effect of depriving the trial courts of their “traditional power” of determining the appropriate sentence as some critics have urged (see Committee on Criminal Advocacy of Assn of Bar of City of NY, Prosecutorial Displacement of Judicial Sentencing Power Under People v Farrar: A Call for Reconsideration and Remedial Action [1983]) or are necessary to eliminate some of the more notorious sentence disparities as the defendant suggests. These arguments serve to illustrate the fundamental disagreements resulting from the extensive use of guilty pleas, which at the present time account for all but a small percentage of the criminal convictions in this State. However, they are matters for the Legislature which is well aware of the turmoil generated by the existing sentencing procedures and has recently established a special committee of distinguished experts to provide new solutions to the long-standing problem of suiting the punishment to the offense and the offender (see L 1983, ch 711, establishing the Sentencing Guidelines Committee).
*522 Accordingly, the order of the Appellate Division should be modified by reinstating the sentence imposed by that court in its order of June 7,1982 and deleting the provision remitting the case to the trial court, and otherwise affirmed.

 The defendant has appealed with respect to the corrective action pursuant to CPL 450.90 (subd 2, par [b]). The People have cross-appealed pursuant to CPL 450.90 (subd 2, par [a]). The Appellate Division’s modification was based on the determination of law that it had power to review the sentence resulting from the guilty plea.